UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sempris, LLC,

      Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-2454 ADM/JJG

Richard Ray Watson,

      Defendant.

_____

David J. Goldstein, Esq. and John H. Lassetter, Esq., Littler Mendelson, PC, Minneapolis, MN, on behalf of Plaintiff.

Ansis V. Viksnins, Esq., Lindquist & Vennum PLLP, Minneapolis, MN; Leonard K. Samuels, Esq. and Steven D. Weber, Esq., Berger Singerman LLP, Fort Lauderdale, FL, on behalf of Defendant.

_____

## I. INTRODUCTION

On October 15, 2012, the undersigned United States District Judge heard oral argument on Plaintiff Sempris, LLC's ("Sempris") Motion for Temporary Restraining Order [Docket No. 2]. Defendant Richard Watson ("Watson") opposes the motion. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

In July 2009, Watson began his employment with Provell, Inc. ("Provell"). Decl. Ray Watson [Docket No. 13] ¶¶ 2-3 ("Watson Decl."). Provell, a Minnesota company, hired Watson as Vice President for Business Development after Watson negotiated to work from his home in Texas where his family resided. Watson Decl. at ¶¶ 9-11. Provell hired Watson to develop, sell, and manage membership reward clubs. Id. Merchants who sell their products via "1-800 number" advertisements can contract with Provell to offer their customers a Provell monthly

membership club which provides customer access to discounted, non-brand specific products. Id. at ¶¶ 6-7. Watson offered these merchants an opportunity to "upsell" their customers, meaning merchants would sell Provell monthly membership clubs in return for a per-customer fee. Id. Watson signed an employment agreement with Provell that included non-compete and confidentiality provisions. Pl.'s Mem. Law Supp. Mot. for TRO [Docket No. 4] 8-9 ("Pl.'s Supp."); Aff. Michael McGowan [Docket No. 6] Ex. A (Provell's Confidentiality, Assignment of Inventions, and Non-compete Agreement) (the "Non-Compete Agreement"). The Non-Compete Agreement restricted Watson from working for a competitive business for a period of one year after his termination. Id. at 11-12. The Non-Compete Agreement also prohibited Watson from "directly or indirectly" soliciting any current or potential customer. Id.

Sempris is a Minnesota based company that develops "membership rewards, customer loyalty, and customer relationship management programs" for client businesses. Pl.'s Supp. at 1. Sempris purchased Provell's assets in January 2011. Id. at 8 n.2. As a result of the acquisition, Sempris became Watson's new employer. Watson did not sign a new employment agreement with Sempris. Instead, Sempris claims it assumed Provell's rights under Watson's employment contract. Id. Watson alleges that starting in October 2011, Sempris changed his employment relationship. Def.'s Mem. Law Opp'n Mot. For TRO [Docket No. 11] at 6 ("Def.'s Opp'n"). For example, Sempris capped Watson's compensation at 40% of his base salary, whereas before, Provell paid Watson a commission for every client he signed, with no cap on his total income potential. Id. at 7. Watson gave his two-week notice of resignation to Sempris on September 4, 2012. Pl.'s Supp. at 13. He informed Sempris at that time that he had accepted a position with Reunion Group, Inc. ("Reunion"), a company in Fort Lauderdale, Florida. Id.

Sempris filed this Motion for Temporary Restraining Order ("TRO") on September 26,

2012. Sempris alleges Watson's employment with Reunion is a violation of his Non-Compete Agreement. Pl.'s Supp. at 2. Sempris asserts Reunion is a direct competitor and Watson is using Sempris' confidential information on behalf of Reunion. Id. at 2, 17-18.

## III. DISCUSSION

### A. Standard of Review

Courts weigh four factors in determining whether to grant injunctive relief: (1) the threat of irreparable harm to the moving party if an injunction is not granted; (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). The fundamental question "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. The movant "bears the burden of establishing the necessity of this equitable remedy." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

### B. Dataphase Factors

No Dataphase factor is dispositive; instead, each factor is to be considered when determining the balance of equities. United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).

#### 1. Threat of Irreparable Harm

A motion for injunctive relief must fail unless the movant demonstrates a threat of irreparable harm. Dataphase, 640 F.2d at 114 n.8; Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987) (irreparable harm is a threshold requirement for preliminary injunctive relief). Two legal considerations are relevant to this case. First, irreparable harm is shown if a

party establishes that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). Threat of irreparable harm requires more than a possibility of remote future injury; it requires a presently existing actual threat of injury. Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). Second, "irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Rogers Group, Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 789 (8th Cir. 2010) (quoting Gen. Motors, 563 F.3d at 319).

Taking these considerations in order, first, Sempris provides no evidence that the threat of irreparable harm is "certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd., 109 F.3d at 425. Sempris "anticipates that Watson will continue to attempt to raid Sempris' current and potential clients and will continue to use its Confidential Information and Trade Secrets to his own and Reunion's advantage." Pl.'s Supp. at 17. Sempris provides no evidence of loss suffered, and its anticipation of future harm is speculative. Sempris expresses concern Watson will "inevitably" use Sempris trade secrets to Reunion's competitive advantage. Id. at 19. In support of its motion, Sempris has not named any current or former clients who have taken their business, or might take their business, from Sempris because of Watson's actions. Sempris claims an unnamed client "inexplicably" cancelled several meetings and has not communicated with Sempris for nearly a month. Id. at 21. But Sempris has addressed no evidence connecting Watson to this unnamed client. To draw the conclusion that Watson is at fault for the disappearance of Sempris' client does not naturally follow. Sempris also fails to name potential clients who have taken business to Reunion or away from Sempris because of Watson's change of employment. It was *Watson's* counsel who

4

identified the only potential client Sempris might suspect of being redirected to Reunion from Sempris. Sempris provided no arguments disputing the explanation given by Watson's attorneys that Reunion sold this client a different product from what Sempris offerred, that Reunion had begun contracting with the client before Watson arrived, and that Watson did not participate in the transaction. Def.'s Opp'n at 16-17. Irreparable harm requires that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief," Iowa Utils. Bd., 109 F.3d at 425. Sempris has not met this required level of threat of harm.

Second, when monetary damages can compensate for present or potential harm, a plaintiff is not entitled to injunctive relief. Rogers Group, 629 F.3d at 789. Sempris claims loss of goodwill, but courts have held that such a claim is insufficient without more. City Cycle IP, LLC v. Caztek, Inc., No. 12-1285, 2012 U.S. Dist. LEXIS 121589 (D. Minn. Aug. 24, 2012) (plaintiff failed to establish how its reputation and goodwill have been or might be damaged). Sempris cites Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 919 (D. Minn. 2004), for the proposition that "irreparable harm exists, and cannot be captured through money damages, when a former employee's competition results in plaintiff losing the opportunity to reclaim the goodwill, reputation, and relationships forged by the former employee at the plaintiff's expense." Here there is no evidence that Watson has been in contact with former or potential clients of Sempris, so the Court cannot find a loss of goodwill to recover.

**2. Likelihood of Success on the Merits**

Minnesota law views non-competition agreements as restraints on trade, and Minnesota law disfavors restraints on trade. Nat'l Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982); see Matson Logistics, LLC v. Smiens, No. 12-400, 2012 U.S. Dist. LEXIS 77454, *9-10 (D. Minn. June 5, 2012) (non-competition agreements are disfavored). A restrictive

5

covenant in an employment agreement entered into at the inception of the employment relationship does not require independent consideration. Cashman, 323 N.W.2d at 740. However, if the agreement is not entered into at the beginning of employment, it must be supported by independent consideration. Id. Continued employment may constitute independent consideration "if the agreement is bargained for and provides the employee with 'real advantages'." Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 265 (Minn. Ct. App. 1996) (citing Freeman v. Duluth Clinic, 334 N.W.2d 626, 630 (Minn. 1983)). An inference of irreparable harm may arise from the breach of a valid non-compete agreement. See Overholt Crop Ins. Serv. Co. v. Bredeson, 437 N.W.2d 698, 701 (Minn. Ct. App. 1989); Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1091 (D. Minn. 1981), aff'd, 684 F.2d 565 (8th Cir. 1982). But the inference can be overcome. See Smiens, 2012 U.S. Dist. LEXIS 77454 at *41-43 (inference overcome because injury could be "appropriately remedied through monetary damages" and the court found no threat of future injury).

Sempris cites Universal Hosp. Servs., Inc. v. Hennessey, No. 01-2072, 2002 U.S. Dist. LEXIS 2138, *6 (D. Minn. Jan. 23, 2002) and a string of other cases, all of which are decided based on a non-compete agreement's unquestioned validity. Pl.'s Supp. at 19-20. In those decisions, irreparable harm was easily inferred because the two parties had seemingly agreed that protecting the employer's interests with a non-compete agreement was an appropriate, bargained-for condition of employment and the employee was receiving just compensation in return. Here, when the court considers the likelihood of success on the merits, Watson's claim that his Non-Compete Agreement with Provell is invalidated by the change in his employment responsibilities and compensation with Sempris must be considered. Def.'s Opp'n at 6. Watson's compensation was capped at 40% of his base salary, whereas before the change,

6

Provell paid Watson a commission for every client he signed, with no cap on his total income potential. Id. at 7. In addition, Sempris sent Watson an Employee Handbook in April 2012, over three months after Sempris purchased Provell's assets. Pl.'s Supp. at 10. Watson claims that he was told to use the Sempris name in 2011, but April was the first formal notice to him that Sempris had purchased Provell. Def.'s Opp'n at 5-6. Watson claims it was not until April 2012 that Sempris sent an e-mail informing him that it considered Watson's restrictive covenants as remaining in force. Id. at 21. The change in compensation without bargaining may invalidate the Non-Compete Agreement. Further, the delay in communication with Watson after Sempris bought Provell's assets also complicates a finding of the Non-Compete Agreement's validity.

Furthermore, even if the Court were to find a valid non-compete agreement, the presence of an agreement does not answer the overarching question: are Sempris and Reunion competitors in the same market? At oral argument, Sempris presented side-by-side comparisons of products, attempting to prove that the two companies are in the same business. Hr'g Pl.'s Mot. TRO 4:23-25. But this presentation displayed comparisons of Reunion products side by side with Damark International Inc. ("Damark"), a predecessor in interest to Sempris, which the Court was told went out of business in 2000. Id. at 22:12-14. Sempris presented no evidence that it continues to sell products in the same manner as Damark, except for one client, Frederick's of Hollywood, an account on which Watson never worked. Id. at 34:11-22.

Reunion offers client-specific "VIP" upgrades, allowing clients to offer their customers the advantages of special brand-specific deals. Def.'s Opp'n at 9. In contrast, Sempris sells clients monthly membership packages of non-brand specific discounts that clients can sell to their customers. There is also evidence from oral argument and the parties' briefs that Sempris and Reunion had never directly competed for a client and did not even know the other existed

7

until each researched the other's website during Watson's transition. Def.'s Opp'n at 8-9, 18. Based on the current record before the Court, Sempris' likelihood of success on the merits is not strong.

### 3. Balance of Harms

Sempris has not met the threshold requirement of a clear threat of irreparable harm, but even if the Court were to decide that Watson's Non-Compete Agreement is valid and that the irreparable inference is appropriate, the balance of harms still weigh in Watson's favor. The next <u>Dataphase</u> factor requires balancing the irreparable harm to the movant, if any, and the injury which granting an injunction will cause to the other interested party. <u>Dataphase</u>, 640 F.3d at 113. The harm to Watson is loss of gainful employment for one year. In comparison to the lack of evidence of harm to Sempris, Watson's harm is real and present.

### 4. The Public Interest

The final <u>Dataphase</u> factor is the public interest. <u>Dataphase</u>, 640 F.3d at 113. Generally, the public interest favors enforcing contracts. <u>Benfield,</u>, 351 F. Supp. 2d at 919. In this case, the validity of the Non-Compete Agreement is not clear and the issue of breach is hotly disputed. The public's interest in favor of enforcing contracts should await the clearer determination of the underlying facts.

## C. Posture of the Case

Sempris has not submitted sufficient evidence of record to establish the necessity for injunctive relief. Sempris did not establish irreparable harm or a likelihood of success on the merits. See <u>IBM v. Seagate</u>, 941 F. Supp. 98, 101 (D. Minn. 1992) ("Merely possessing trade secrets and holding a comparable position with a competitor does not justify an injunction."). However, Watson is forewarned that he remains bound by the terms of his employment contract

at this juncture. He may ultimately be found to be in breach of his Non-Compete Agreement; and if so, Watson will be responsible for damages to Sempris.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that: Plaintiff Sempris' Motion for Temporary Restraining Order [Docket No. 2] is **DENIED.**


BY THE COURT:


    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  October 22, 2012.